J-S27010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                         :                  PENNSYLVANIA
                                                         :
                          v.                             :
                                                         :
                                                         :
                                                         :
JASON MILLER                                             :
                                                         :
                    Appellant              :        No. 1106 WDA 2018

Appeal from the PCRA Order Entered July 6, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007883-2017

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OLSON, J.:                            **FILED JUNE 7, 2019**

Appellant, Jason Miller, appeals from the July 6, 2018 order dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The factual history of this case is derived from the May 15, 2017, affidavit of probable cause, video recordings of the incident, and the transcript of the July 6, 2018 PCRA hearing.  On May 15, 2017, Appellant and his girlfriend attended a Pittsburgh Penguins hockey game at PPG Paints Arena. Appellant became unruly, used profane language, and security officials asked him to leave the arena.  Appellant refused, insisting he paid too much for his tickets to leave before the end of the game.  Security officials contacted Pittsburgh Police Officer Bryan Sellers, who was working "an approved secondary employment detail" at the arena.  Affidavit of Probable Cause, 05/15/2017, at paragraph 1.  Officer Sellers and another police officer,

_____

* Retired Senior Judge assigned to the Superior Court.

Sergeant M. Graham, responded to the call. The officers attempted to remove Appellant from his seat but Appellant was uncooperative. Appellant instructed his girlfriend to record the encounter with her cellular telephone when Officer Sellers first attempted to physically remove Appellant from his seat.

At some point, Officer Sellers removed his taser from its holster. Officer Sellers grabbed Appellant by his jersey and forced him out of the row. Officer Sellers then brought Appellant to the ground on the concourse. According to the affidavit of probable cause, Appellant continued to resist, but with the help of Sergeant Graham and a security officer, Officer Sellers gained control of Appellant and moved him onto an elevator "with the intention of getting him handcuffed and arrested." Affidavit of Probable Cause, 5/15/2017, at paragraph 6. On the elevator, Appellant allegedly attacked Sergeant Graham, using his forearm to choke her against the wall of the elevator. According to the affidavit of probable cause, it was at this point that Officer Sellers first deployed his taser in an attempt to subdue Appellant.[1] After Officer Sellers discharged his taser twice in the elevator, Appellant ceased resistance, and the officers handcuffed him.

---

[1] Video recordings of the altercation between Appellant and Officer Sellers appear to show that Appellant was tased at least once while on the concourse, prior to entering the elevator, contrary to the version of events described in the affidavit of probable cause.

- 2 -

The Commonwealth charged Appellant with aggravated assault,[2] strangulation,[3] simple assault,[4] resisting arrest,[5] defiant trespass,[6] disorderly conduct,[7] and criminal mischief.[8] On January 3, 2018, Appellant pled guilty to all seven charges and the trial court sentenced him to six months' confinement, with alternative housing eligibility for the first 90 days and eligibility for house arrest thereafter. The Commonwealth read the affidavit of probable cause as the factual basis for Appellant's guilty plea.

On April 23, 2018, Appellant filed a PCRA petition alleging ineffective assistance of counsel. According to Appellant, he arrived in court on January 3, 2018, intending and expecting to take his case to trial.[9] However, when

_____

[2] 18 Pa.C.S.A. § 2702(a)(3).

[3] 18 Pa.C.S.A. § 2718(a)(1).

[4] 18 Pa.C.S.A. § 2701(a)(1).

[5] 18 Pa.C.S.A. § 5104.

[6] 18 Pa.C.S.A. § 3503(b)(1)(i).

[7] 18 Pa.C.S.A. § 5503(a)(1).

[8] 18 Pa.C.S.A. § 3304(a)(5).

[9] At the July 6, 2018, PCRA hearing, Appellant's plea counsel testified as follows:

Q: [] [D]id he [Appellant] show up that morning expecting to go to trial, do you remember?

A: That was definitely a strong possibility.

Appellant spoke with his attorney, Justin Ketchel, Esquire, Attorney Ketchel advised him that the videos of the incident may not be admissible because they could not be properly authenticated.[10] Additionally, Mr. Ketchel advised Appellant that his prior conviction for simple assault could be used to impeach him if he took the stand in his own defense or to authenticate the video depictions of the relevant events. Appellant's petition for collateral relief alleged that, "due to bad and erroneous advice [from] Attorney Ketchel, [Appellant formed the impression that any video evidence that appeared to contradict the facts contained in the affidavit of probable cause could not be authenticated and was, therefore, inadmissible. Thus, Appellant] was left with a belief that his case would be his word versus that [] of one or two police officers." Petition for Post-Conviction Relief, 04/23/2018, at paragraph 10. On July 6, 2018, the PCRA court conducted a hearing on Appellant's claims.

_____

N.T., 7/6/2018, at 16.

[10] Appellant introduced two videos of the incident at the July 6, 2018 PCRA hearing. The first video is a news report from WPXI, a local news station, which showed cellular telephone footage filmed by another fan at the game, Ben Tucci, and an interview with Mr. Tucci about the incident. The other video also appears to be cellular telephone footage of the altercation, which was uploaded to YouTube.com. The record indicates that plea counsel was also in possession of a video from PPG Paints Arena security; however, Appellant did not introduce that video at the PCRA hearing and it is not part of the record before this Court.

Attorney Ketchel and Appellant each testified at the hearing. The PCRA court denied Appellant's petition and this appeal followed.[11]

Appellant presents two issues for our review:

I.    Whether the PCRA court erred in dismissing Appellant's petition for post-conviction relief where plea counsel provided ineffective assistance by giving Appellant inaccurate information regarding the authentication of videos which would have supported Appellant's defense at trial, thereby inducing Appellant to enter a plea deal?

II.   Whether the PCRA court erred in dismissing Appellant's petition for post-conviction relief where plea counsel provided ineffective assistance by inaccurately informing Appellant that his prior criminal record would be introduced if [he] went to trial, thereby inducing Appellant to enter a plea deal?

Appellant's Brief at 4 (capitalization removed).

"Appellant's claim for ineffective assistance of counsel in connection with advice rendered regarding whether to plead guilty is cognizable under the PCRA pursuant to 42 Pa.C.S. § 9543(a)(2)(ii)." **Commonwealth v. Barndt**, 74 A.3d 185, 192 (Pa. Super. 2013). "This Court's standard of review regarding an order denying a petition under the PCRA is whether the

_____

[11] On August 16, 2018, the PCRA court ordered Appellant to file a concise statement of matters complained of on appeal within 21 days, pursuant to Pa.R.A.P. 1925(b). Appellant complied on September 7, 2018, 22 days after the order. The PCRA court issued its 1925(a) opinion on November 30, 2018, which fully addressed the issues Appellant presented. Although Appellant filed an untimely concise statement, we will address the merits of his claims. **See Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) ("if there has been an untimely filing [of the concise statement], this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal.")

determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Rizvi*, 166 A.3d 344, 347 (Pa. Super. 2017).

> In order to succeed on an ineffective assistance of counsel claim, the petitioner must show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and [](3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different**. In the context of a guilty plea, an appellant must show that plea counsel's ineffectiveness induced him to plea.** If the appellant makes such a showing, we deem his plea involuntarily made and will permit its withdrawal.

*Commonwealth v. Johnson*, 875 A.2d 328, 331 (Pa. Super. 2005) (citations omitted) (emphasis added). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Timchak*, 69 A. 3d 765, 769 (Pa. Super. 2013).

In turning to Appellant's first issue, we must initially assess whether Appellant's claim is of arguable merit. In other words, we must determine whether Attorney Ketchel's advice regarding the admissibility of the video evidence was improper. At the hearing on Appellant's PCRA petition, Attorney Ketchel testified as follows, "I told [Appellant] that we were not—we would not know until we got to the point of trial whether or not these tapes would be able to come in, that that was a ruling that would be made by Your Honor. And I can't say one way or the other that's going to happen. They may come in, they may not." N.T., 7/6/2018, at 17. Appellant testified that, "[Attorney

Ketchel] told me that. . . we would not be able to use any of the videos due to not having Ben Tucci present to authenticate the video or the person that recorded it on YouTube." N.T., 7/6/2018, at 33. The PCRA court credited Attorney Ketchel's assertion that he was equivocal regarding the admissibility of the videos, and we are bound by the PCRA court's findings of fact. ***See*** ***Commonwealth v. Williams***, 141 A.3d 440, 452 (Pa. 2016).

To assess the accuracy of the pre-plea advice conveyed by counsel and on which Appellant relied, we review the Pennsylvania rules regarding admissibility and authentication. Generally, all relevant evidence is admissible. ***See*** Pa.R.E. 402. Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. ***See*** Pa.R.E. 403. Demonstrative evidence such as photographs and videos must be authenticated to establish that they are, in fact, what they purport to be. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Testimony of a witness with knowledge will satisfy that requirement. Pa.R.E. 901(b)(1). "Demonstrative evidence such as photographs, motion pictures, diagrams and models must be authenticated by evidence sufficient to support a finding that the demonstrative evidence fairly and accurately represents that which it purports to depict." Pa.R.E. 901(a) cmt. "Authentication generally entails a

relatively low burden of proof[.]" ***Commonwealth v. Koch***, 106 A.3d 705, 713 (Pa. 2014).

We agree with Appellant that the videos likely could have been authenticated by any witness with personal knowledge of the events, including either Appellant or his girlfriend. Based on the following, we find Appellant's claim is of arguable merit. As explained *supra*, the burden of proof for authentication is relatively low and either Appellant or his girlfriend could have authenticated the videos for purposes of admission into evidence.[12] Appellant and his girlfriend were present during the entire incident, therefore they both had sufficient knowledge to testify that the videos fairly and accurately represent the altercation.

The PCRA court determined that "whether the videos could be properly authenticated was highly questionable" and therefore Attorney Ketchel was not ineffective. PCRA Court Opinion, 11/30/2018, at 4. The PCRA court incorrectly determined that because the videos "did not depict the entire incident that led to criminal charges," namely, the altercation in the elevator, that they could not be admitted. ***Id***. at 5. However, Appellant intended to admit the videos to challenge the credibility of Officer Sellers by highlighting

---

[12] The authenticating witness's recall or awareness of the entirety of the episode would go to the weight of the evidence, not its admissibility. ***See*** Pa.R.E. 104(e) ("Even though the court rules that evidence is admissible, this does not preclude a party from offering other evidence relevant to the weight or credibility of that evidence.")

the discrepancies between the affidavit of probable cause and the videos. Specifically, the affidavit indicates that Officer Sellers did not tase Appellant until both were in the elevator, whereas the videos indicate that Officer Sellers likely tased Appellant on the concourse. Thus, it was not necessary for the videos to depict the entire episode in order to be authenticated and admitted for the purpose pursued by Appellant.

Based on our review of the record and the relevant law, it appears that Attorney Ketchel's uncertain advice regarding the admissibility of the videos was incorrect as it was based on his mistaken belief that the person who recorded the video likely needed to be the one to authenticate it. *See Commonwealth v. Impellizzeri*, 661 A.2d 422, 428 (Pa. Super. 1995) ("It is not necessary that the maker of the videotape testify to the tape's accuracy; **any witness familiar with the subject matter** can testify that the tape was an accurate and fair depiction of the events sought to be shown[.]") (emphasis added).[13]     Counsel's equivocal statement did not accurately reflect

---

[13] *See Commonwealth v. Loughnane*, 128 A.3d 806 (Pa. Super. 2015), *reversed on other grounds*, 173 A.3d 733 (Pa. 2017) (testimony from a security center employee who reviewed footage after hearing a description of the vehicle police were looking for was sufficient to authenticate the screenshot taken from the footage and discrepancies regarding the time stamp on the image go to weight, not admissibility); *Commonwealth v. McKellick*, 24 A.3d 982 (Pa. Super. 2011) (testimony from the "mobile video recording officer" who was responsible for downloading dashboard camera videos and an officer with years of experience as a field sobriety test instructor was sufficient to authenticate a video of appellant's traffic stop after the officer who actually participated in the stop was killed before trial).

Pennsylvania law in terms of the burden and methods for authenticating video recordings. Therefore, Appellant's claim is of *arguable* merit.

However, we find that the record supports the inference that plea counsel's advice had some reasonable strategic basis designed to effectuate Appellant's interests. Although under applicable Pennsylvania law the videos likely could have been authenticated and admitted into evidence, the videos of record are not exculpatory to Appellant. As the PCRA court put it, although "[they] would cast doubt on [the] credibility [of Officer Sellers], it doesn't mean you lose or win." N.T., 7/6/2018, at 69. Moreover, plea counsel accurately advised Appellant that they would not know whether the videos would be admitted until they got to that point at trial. We agree with the following observation of the PCRA court. "Isn't that what we do [] as defense lawyers? We say this is how bad it can go for you, you need to know that so you have an informed decision about the risks you're taking by going to trial." N.T., 7/6/2018, at 70. Although plea counsel may have misapprehended the rules of authentication, it would have been equally unsound to advise Appellant that the videos would certainly have been admitted. There is no way to accurately predict the outcome of each ruling at trial. Moreover, the video recordings did not exculpate Appellant from the central charges in this matter: the attack on Sergeant Graham in the elevator. Plea counsel negotiated a mitigated sentence to very serious charges, including aggravated

assault of a female police officer. Plea counsel was not ineffective for advising Appellant of the risks associated with going to trial.[14]

Finally, the record does not support a finding that counsel's inaccurate advice regarding the admissibility of the videos induced Appellant to plead guilty. To the contrary, Appellant's plea was based on an accurate assessment of the risks associated with going to trial and an understanding of the seriousness of the charges. Accordingly, Appellant's first claim fails.

Appellant's second claim also fails. Appellant claims that plea counsel was ineffective for advising him that his prior convictions, including one for simple assault, could be used to impeach him if he took the stand. Appellant argues that evidence of a prior conviction can only be admitted if the crime involved was one of *crimen falsi*, meaning it involved dishonesty or false statement. Appellant's Brief at 16; *See* Pa.R.E. 609. Appellant avers that none of his prior criminal charges involved *crimen falsi* offenses and, therefore, plea counsel was ineffective for advising him in this way.

At the PCRA hearing, in response to the question, "[d]id you discuss with [Appellant] if he testified his priors would or would not come in," plea counsel testified as follows: "[c]ertainly if he takes the stand, with any

---

[14] ***Compare Commonwealth v. Persinger***, 615 A.2d 1305 (Pa. 1992) (plea counsel was ineffective for failing to advise client that sentences could be imposed consecutively.)

defendant in any case, there's the possibility they may open the door and, therefore, his prior convictions could come in." N.T., 7/6/2018, at 17. We find this advice to be legally sound. If Appellant took the stand and testified that he has a reputation for peacefulness or for being a law-abiding citizen, pursuant to Pa.R.E. 404(a)(2)(A), the Commonwealth would be permitted to offer evidence of his convictions to rebut that assertion. Additionally, if Appellant were to testify in a way that put the victim's character at issue, the Commonwealth could introduce evidence that Appellant has the same trait or character. *See* Pa.R.E. 404(a)(2)(B)(ii); Pa.R.E. 404(a)(2)(B)(ii) cmt ("For example, in an assault and battery case, if the defendant introduces evidence that the alleged victim was a violent and belligerent person, the Commonwealth may counter by offering evidence that the defendant was also a violent and belligerent person.") Therefore, as Appellant's second claim is not of arguable merit, we need not reach the other two factors necessary to succeed on an ineffective assistance of counsel claim. Appellant is not entitled to relief.

Order affirmed.

Ott, J. joins the memorandum.

Colins, J. notes dissent.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/7/2019</u>